# Illinois Official Reports

## Supreme Court

---

### *In re M.A.*, 2015 IL 118049

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* M.A., a Minor (The People of the State of Illinois, Appellant and Cross-Appellee, v. M.A., Appellee and Cross-Appellant). |
| Docket No. | 118049 |
| Filed | November 4, 2015 |
| Decision Under Review | Appeal from the Appellate Court for the First District; heard in that court on appeal from the Circuit Court of Cook County, the Hon. Stuart P. Katz, Judge, presiding. |
| Judgment | Appellate court affirmed in part and reversed in part. <br> Circuit court affirmed. |
| Counsel on Appeal | Lisa Madigan, Attorney General, of Springfield, and Anita Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Annette Collins and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People. <br><br> Michael J. Pelletier, State Appellate Defender, Alan D. Goldberg, Deputy Defender, and Rachel Moran, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellee. <br><br> Marsha Levick and Kacey Mordecai, of Philadelphia, Pennsylvania, and Shobha L. Mahadev and Scott Main, of Northwestern University School of Law, of Chicago, for *amici curiae* Juvenile Law Center *et al.* |

Justices          JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justice Karmeier concurred in the judgment and opinion.

Justice Burke specially concurred, with opinion, joined by Justices Freeman, Kilbride, and Theis.

**OPINION**

¶ 1    Respondent, M.A., was adjudicated delinquent of several offenses. As a result of her adjudication, M.A. was ordered to register under the Murderer and Violent Offender Against Youth Registration Act (Violent Offender Act) (730 ILCS 154/1 *et seq.* (West 2012)). M.A. appealed, contending that the registration provisions of the Violent Offender Act violated her right to substantive and procedural due process, as well as equal protection.

¶ 2    The Appellate Court, First District, rejected M.A.'s claim that the statute violated her right to substantive due process. 2014 IL App (1st) 132540. The appellate court, however, with one justice dissenting, agreed with M.A. that the registration provisions are unconstitutional because the provisions violate procedural due process and equal protection. *Id.* The appellate court therefore reversed the trial court's order requiring M.A. to register under the Act.

¶ 3    This appeal as of right followed. Ill. S. Ct. R. 317 (eff. July 1, 2006). We subsequently allowed the Juvenile Law Center, the Children and Family Justice Center, the Civitas ChildLaw Center, the Edwin F. Mandel Legal Aid Clinic of the University of Chicago Law School, the James B. Moran Center for Youth Advocacy, the Juvenile Justice Initiative, and the National Juvenile Defender Center, to file a joint *amicus curiae* brief on behalf of M.A. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 4                                    BACKGROUND

¶ 5    M.A., was charged in a juvenile petition with aggravated domestic battery (720 ILCS 5/12-3.3 (West 2012)), aggravated battery (720 ILCS 5/12-3.05(f)(1) (West 2012)), battery (720 ILCS 5/12-3(a)(1) (West 2012)), and domestic battery (720 ILCS 5/12-3.2(a)(1) (West 2012)). The incident giving rise to the charges occurred on November 24, 2012. On that date, M.A. was 13 years old. That morning, M.A. and her 14-year-old brother, Muhammad, were at their aunt's house. M.A. and Muhammad got into an argument over a missing shower cap. Muhammad said that M.A. was the last person to have the shower cap. M.A. said she was not, and swore on her grandfather that she did not have the shower cap. M.A.'s grandfather was deceased, so Muhammad became angry and said, "Don't be putting shit on my granddaddy." When M.A. responded, "You don't tell me what to do," Muhammad went over to the couch where M.A. was sitting, and told her, "Do it again." M.A. told Muhammad, "Get out of my face." Muhammad then punched M.A. in the face.

¶ 6    When the fight ended, M.A. ran to the kitchen and grabbed a knife. Muhammad went into a bedroom and shut the door. M.A. managed to enter the bedroom and cut Muhammad on his

face and his arm. Muhammad received 3 stitches for the cut on his face and 10 stitches for the cut on his arm.

¶ 7   At trial, Muhammad testified that he punched M.A. two or three times on her arm. Muhammad said the fight lasted about a minute, then he went into a back bedroom. After M.A. went into the kitchen, she tried to force her way into the bedroom. Muhammad tried to keep M.A. out because she was yelling something "like I want to kill you" and had a large kitchen knife in her hand. M.A. forced her way into the bedroom and began swinging the knife at Muhammad, trying to stab him. M.A. cut Muhammad with the knife on his face and his arm.

¶ 8   Johanne Saintsurin, M.A.'s aunt, testified that the fight started when Muhammad pushed M.A. on the couch, got on top of her and started punching her everywhere. After Muhammad stopped punching M.A., M.A. walked to the kitchen saying "she was going to kill him, something like that." Muhammad went into the bedroom and closed the door, and M.A. came back with a knife from the kitchen. Saintsurin told M.A. to put the knife down. When M.A. did not put the knife down, Saintsurin called M.A.'s father and went to check on the younger children. Saintsurin then saw that Muhammad was bleeding from his arm and his nose. Saintsurin called 911. M.A. was still in the living room holding the knife when the police arrived. Saintsurin noticed several items in the living room, including a medicine ball and a pillow, had been cut open.

¶ 9   M.A. testified on her own behalf that when she and Muhammad got into the argument, Muhammad came over to the couch where she was sitting and punched her multiple times. Muhammad also pulled her hair, was "hollering and cussing," and was grabbing her. M.A. testified that she ran to the kitchen and grabbed a knife, but claimed she was trying to scare Muhammad and was not trying to cut him. M.A. testified that she followed Muhammad into the bedroom. When Muhammad opened the door a little, she "slashed" the knife in the door to scare him. M.A. admitted that she was talking about "killing" him.

¶ 10   On May 2, 2013, M.A. was adjudicated delinquent on all counts. The circuit court of Cook County found Muhammad's account of the incident more credible and did not believe M.A. had made just one pass of the knife through the door. The circuit court sentenced M.A. to 30 months' probation, with certain conditions. One of the conditions was that M.A. was required to register under the Violent Offender Act. M.A.'s motion to reconsider the finding of delinquency was denied.

¶ 11   M.A. then filed an appeal, arguing that the automatic application of the Violent Offender Act's registration provisions to juvenile offenders violated substantive and procedural due process. M.A. also argued that the Violent Offender Act's registration provisions, as applied to juvenile offenders, resulted in a denial of equal protection, because juvenile violent offenders were treated more harshly than juvenile sex offenders. M.A. did not appeal her adjudication or the sufficiency of the evidence to support her adjudication.

¶ 12   The appellate court first rejected M.A.'s claim that the Violent Offender Act violated her right to substantive due process. 2014 IL App (1st) 132540, ¶ 48. The appellate court, however, agreed with M.A. that the Act denied her right to procedural due process. The appellate court found unconstitutional the Violent Offender Act's provision mandating registration of juvenile violent offenders against youth as adults when they turned 17 years of age. *Id.* ¶ 65. The appellate court also held that the failure of the Violent Offender Act to

provide any means by which a juvenile offender can petition to be taken off the registry was unconstitutional. *Id.*

¶ 13   In addition, the appellate court found that the Violent Offender Act denied juvenile offenders equal protection and was unconstitutional on that basis as well. The appellate court held that the appropriate class for purposes of its equal protection analysis was juvenile offenders who, as a result of a juvenile adjudication, are required to register with law enforcement authorities. *Id.* ¶ 69. Looking at the class, the appellate court concluded that juvenile sex offenders are treated differently, and more leniently, than juveniles required to register as violent offenders against youth. *Id.* The appellate court majority found there was no rational basis for treating juvenile sex offenders more leniently than juvenile violent offenders. *Id.* ¶ 73.

¶ 14   One justice dissented from the appellate court's finding that the Violent Offender Act violated procedural due process and equal protection. 2014 IL App (1st) 132540, ¶¶ 77-108 (Pucinski, J., concurring in part and dissenting in part). Justice Pucinski would find that M.A. received all the process she was due during her delinquency adjudication, noting that it was the delinquency adjudication that triggered the Act's mandatory registration requirements. *Id.* ¶ 98. Justice Pucinski also disagreed that juvenile sex offenders and juvenile violent offenders were similarly situated for purposes of equal protection. *Id.* ¶¶ 101-04.

¶ 15                                          ANALYSIS

¶ 16   On appeal, the State argues that the appellate court majority erred in finding that the Violent Offender Act violated procedural due process and equal protection. M.A. seeks cross-relief, arguing that the appellate court erred in finding that the Act did not violate substantive due process.

¶ 17   With regard to juveniles, the Violent Offender Act states:

> "(a) As used in this Act, 'violent offender against youth' means any person who is:
> ***
>
> (2) adjudicated a juvenile delinquent as the result of committing or attempting to commit an act which, if committed by an adult, would constitute any of the offenses specified in subsection (b) or (c-5) of this Section ***, or found guilty under Article V of the Juvenile Court Act of 1987 of committing or attempting to commit an act which, if committed by an adult, would constitute any of the offenses specified in subsection (b) or (c-5) of this Section ***.
> ***
>
> For purposes of this Section, 'convicted' shall have the same meaning as 'adjudicated'. For the purposes of this Act, a person who is defined as a violent offender against youth as a result of being adjudicated a juvenile delinquent under paragraph (2) of this subsection (a) upon attaining 17 years of age shall be considered as having committed the violent offense against youth on or after the 17th birthday of the violent offender against youth. Registration of juveniles upon attaining 17 years of age shall not extend the original registration of 10 years from the date of conviction." 730 ILCS 154/5(a)(2) (West 2012).

¶ 18    The Violent Offender Act further provides:

"(b) As used in this Act, 'violent offense against youth' means:

* * *

(4.4) A violation or attempted violation of any of the following Sections or clauses of the Criminal Code of 1961 or the Criminal Code of 2012 when the victim was under 18 years of age and the offense was committed on or after *** (2) July 26, 2010 and the defendant was under the age of 18:

12-3.3 (aggravated domestic battery),

12-3.05(a)(1), 12-3.05(d)(2), 12-3.05(f)(1), 12-4(a), 12-4(b)(1), or 12-4(b)(14) (aggravated battery)[.]" 730 ILCS 154/5(b)(4.4) (West 2012).

¶ 19    Because M.A. was adjudicated delinquent for the offenses of aggravated domestic battery and aggravated battery, M.A. fell within the definition of a violent offender against youth. The Violent Offender Act provides that a violent offender against youth has a duty to register (730 ILCS 154/10 (West 2012)). With regard to a juvenile, the Act provides that:

"A person who has been adjudicated a juvenile delinquent for an act which, if committed by an adult, would be a violent offense against youth shall register as an adult violent offender against youth within 10 days after attaining 17 years of age." 730 ILCS 154/10(a) (West 2012).

With certain exceptions not relevant in this case, a person required to register under the Violent Offender Act is "required to register for a period of 10 years after conviction or adjudication if not confined to a penal institution, hospital or any other institution or facility." 730 ILCS 154/40 (West 2012).

¶ 20    The Violent Offender Act requires the Department of State Police to establish and maintain a statewide Murderer and Violent Offender Against Youth database "for the purpose of identifying violent offenders against youth and making that information available to the persons specified in Section 95." 730 ILCS 154/85(a) (West 2012). Section 95 of the Act provides for the community notification of violent offenders against youth. 730 ILCS 154/95 (West 2012). However, with regard to juvenile offenders, the Violent Offender Act states:

"(a) The Department of State Police and any law enforcement agency having jurisdiction may, in the Department's or agency's discretion, only provide the information specified in subsection (b) of Section 95, with respect to an adjudicated juvenile delinquent, to any person when that person's safety may be compromised for some reason related to the juvenile violent offender against youth.

(b) The local law enforcement agency having jurisdiction to register the juvenile violent offender against youth shall ascertain from the juvenile violent offender against youth whether the juvenile violent offender against youth is enrolled in school; and if so, shall provide a copy of the violent offender against youth registration form only to the principal or chief administrative officer of the school and any guidance counselor designated by him or her. The registration form shall be kept separately from any and all school records maintained on behalf of the juvenile violent offender against youth." 730 ILCS 154/100 (West 2012).

¶ 21    In reviewing the Violent Offender Act's registration provisions, we observe that statutes are presumed constitutional, and this court will construe a statute in a manner that affirms the

constitutionality of the statute, if reasonably possible. *People v. Hollins*, 2012 IL 112754, ¶ 13. The party challenging the constitutionality of a statute has the burden of proving that the statute is unconstitutional. *Id.* The constitutionality of a statute presents a question of law, which is reviewed *de novo*. *Id.*

¶ 22   As noted, the appellate court majority held that the Violent Offender Act violated procedural due process and equal protection. Article I, section 2, of our state constitution guarantees its citizens equal protection and due process of law. Article I, section 2, provides:

> "No person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2.

Likewise, the fourteenth amendment of the United States Constitution provides:

> "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV, § 1.

¶ 23   We first address the appellate court's finding that the Violent Offender Act denies juvenile violent offenders equal protection. It appears from the appellate court's opinion that M.A. argued that the Act violated the equal protection clause of both the Illinois Constitution and the federal constitution. See 2014 IL App (1st) 132540, ¶ 67. The appellate court did not expressly state whether its finding of an equal protection violation was under the state constitution, the federal constitution, or both. This omission does not change our review, as this court applies the same standard under both the Illinois Constitution and the United States Constitution when conducting an equal protection analysis. *People v. Richardson*, 2015 IL 118255, ¶ 9.

¶ 24   The equal protection clause guarantees that similarly situated individuals will be treated in a similar manner, unless the government can demonstrate an appropriate reason to treat those individuals differently. *Id.* The equal protection clause does not forbid the legislature from drawing proper distinctions in legislation among different categories of people, but the equal protection clause does prohibit the legislature from doing so based on criteria wholly unrelated to the legislation's purpose. *Id.*

¶ 25   A threshold matter in addressing an equal protection claim is determining whether the individual claiming an equal protection violation is similarly situated to the comparison group. *People v. Masterson*, 2011 IL 110072, ¶ 25.

> "As the Supreme Court has noted, equal protection 'does not forbid all classifications' (*Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)), '[i]t simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike*.' (Emphasis added.) *Id.* Evidence of different treatment of unlike groups does not support an equal protection claim. *Fournier v. Sebelius*, 718 F.3d 1110, 1124 (9th Cir. 2013)." (Emphasis in original.) *In re Derrico G.*, 2014 IL 114463, ¶ 92.

¶ 26   When a party bringing an equal protection claim fails to show that he is similarly situated to the comparison group, his equal protection challenge fails. *Masterson*, 2011 IL 110072, ¶ 25. Generally, in the context of equal protection claims, a determination of whether individuals are similarly situated requires an analysis of the purpose of the legislation at issue. *Id.*

¶ 27   In the appellate court, the State argued that M.A. could not meet the threshold requirement of similarly situated groups because juvenile violent offenders are not similarly situated to juvenile sex offenders. The appellate court acknowledged that the offenses with which both

groups of juveniles were charged were different and required proof of different elements, so "in that sense, the two groups are not similarly situated." 2014 IL App (1st) 132540, ¶ 69. Nonetheless, the appellate court held that for purposes of its equal protection analysis, "the appropriate class of persons is juvenile offenders who, as a result of a juvenile adjudication, are required to register with law enforcement authorities." *Id.* In that context, the appellate court concluded that juveniles required to register as sex offenders were treated differently, and much more leniently, than juveniles required to register as violent offenders against youth. *Id.*

¶ 28    The appellate court observed that juveniles required to register as sex offenders under the Sex Offender Registration Act (Registration Act) were relieved of the obligation to register as adults upon turning 17 years old and were allowed an opportunity, after five years, to demonstrate that their obligation to register should be terminated. 2014 IL App (1st) 132540, ¶ 69. In contrast, juveniles required to register under the Violent Offender Act are required to register as adults upon turning 17 years old and do not have the opportunity to seek termination of their registration after five years. The appellate court held that the disparity in treatment between these "similarly situated" groups had no rational basis, so that the Violent Offender Act's registration requirement for juveniles violated equal protection.

¶ 29    Upon review, we disagree with the appellate court's threshold determination that juvenile sexual offenders are similarly situated to juvenile violent offenders. While juveniles adjudicated delinquent under the Registration Act and under the Violent Offender Act may appear to be similarly situated because both statutes require the juveniles to register, a determination that individuals are similarly situated for equal protection purposes cannot be made in the abstract. *People v. Warren*, 173 Ill. 2d 348, 363 (1996). The determination whether individuals are similarly situated generally can only be made by considering the purpose of the particular legislation. *Id.*

¶ 30    The Registration Act was enacted in 1986 and was originally titled the Habitual Child Sex Offender Registration Act (1986 Act) (Ill. Rev. Stat. 1987, ch. 38, ¶ 221 *et seq.*). The 1986 Act was passed "in response to concern over the proliferation of sex offenses against children." *People v. Adams*, 144 Ill. 2d 381, 386 (1991). In enacting the 1986 Act, "the legislature sought to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse" by requiring sex offenders to register with local law enforcement agencies. *Id.* at 387. The title of the 1986 Act was amended in 1993 to the Child Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 1994)). The title was again amended in 1996 to the Registration Act (730 ILCS 150/1 *et seq.* (West 1996)).

¶ 31    In addition to renaming the statute, the 1996 amendments to the Registration Act also expanded the statute to include enumerated sex offenses against adult victims, as well as certain sexual and nonsexual offenses against child victims (730 ILCS 150/1 *et seq.* (West 1996)). Ten years later, the legislature enacted the Violent Offender Act. In introducing the bill which would become the Violent Offender Act, Representative Fritchey stated:

> " 'Ladies and Gentlemen, this is actually a very serious issue. Last week we had a number of Bills come up and I'm sure we will this week and next week again, with continual crackdowns on individuals that are on the sex offender registry. What a lot of you may not recognize is that *there are a number of individuals that are on that registry whose crimes have nothing to do with the sexual offense*. They may have to do with a murder if the victim was a minor. It may have to do with aggravated kidnapping with

certain offenses along those lines. *What this piece of legislation does is clean up, 10 years too late, the sex offender registry to make sure that only those individuals that've [sic] committed sex offenses remain on that registry*. What is [sic] does not do is take these people out of the purview of law enforcement. It simply shifts them over into a new registry which will be called the Violent Offender Against Youth Registry. We would still be able to monitor them, we'd still be able to track them, *but we will not further stigmatize individuals who have already committed a crime and come out and paid their time by calling them sex offenders when they're actually not.*' " (Emphases added.) 94th Ill. Gen. Assem., House Proceedings, Feb. 22, 2006, at 13 (statements of Representative Fritchey).

¶ 32    The purpose of the Violent Offender Act, then, was to remove nonsexual offenders from the Registration Act, as the legislature concluded that it was a greater stigma to be categorized as a sex offender than a violent offender. The legislature also recognized that the crimes of the nonsexual offenders had nothing to do with sexual offenses. In other words, the Violent Offender Act was enacted *because* the legislature determined that violent offenders were not similarly situated to sex offenders. The Registration Act and the Violent Offender Act address qualitatively different types of offenders and qualitatively different types of offenses. Consequently, although both juvenile sexual offenders and juvenile violent offenders are required to register under the applicable statutes, the statutes address separate groups of offenders in a manner unique to each group.

¶ 33    The appellate court majority essentially conceded as much when it admitted that "[c]learly, the offenses with which the two groups of juveniles are charged are different and require proof of different elements and in that sense, the two groups are not similarly situated." 2014 IL App (1st) 132540, ¶ 69. Nonetheless, in order to reach the merits of M.A.'s equal protection argument, the majority simply concluded that, "for purposes of M.A.'s equal protection argument, we believe the appropriate class of persons is juvenile offenders who, as a result of a juvenile adjudication, are required to register with law enforcement authorities." *Id.* Aside from this conclusory statement, the majority does not otherwise support its finding that the two groups of juveniles are similarly situated. Simply declaring a group similarly situated does not make it so absent some evidence that the individuals are in all respects alike.

¶ 34    M.A., a juvenile violent offender, was not similarly situated to a juvenile adjudicated delinquent under the Registration Act. Therefore, it is of no consequence that the registration provisions for juveniles adjudicated delinquent under the Registration Act differ from the registration provisions for juveniles adjudicated delinquent under the Violent Offender Act. Evidence of different treatment of unlike groups does not support an equal protection claim. *In re Derrico G.*, 2014 IL 114463, ¶ 92. Because M.A. cannot meet the threshold requirement for bringing an equal protection claim, her equal protection claim necessarily fails. The appellate court erred in finding otherwise and in holding that the Violent Offender Act was unconstitutional because it violated equal protection.

¶ 35    Having found that the Violent Offender Act does not violate equal protection, we next consider the appellate court's finding that the Violent Offender Act also violated procedural due process. A procedural due process claim challenges the constitutionality of specific procedures used to deny a person's life, liberty or property. *People v. Cardona*, 2013 IL 114076, ¶ 15. The fundamental requirements of due process are notice of the proceeding and

an opportunity to present any objections. *Id.* Due process is a flexible concept and "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

¶ 36　　When a fundamental right or suspect classification based upon race or national origin is involved, strict scrutiny analysis applies. *People v. Masterson*, 2011 IL 110072, ¶ 24. Strict scrutiny requires a showing that the statute is narrowly tailored to serve a compelling state interest. *Id.* When a fundamental right or suspect classification is not involved, the rational basis standard applies. *Id.* The rational basis test requires a determination of whether the statute bears a rational relationship to a legitimate government purpose. *Id.*

¶ 37　　In addressing M.A.'s constitutional claims, the appellate court found that the Violent Offender Act did not violate any of M.A.'s fundamental rights. Accordingly, the appellate court applied the rational basis test in addressing those constitutional challenges. M.A. does not contest the appellate court's finding that the rational basis test applies to her constitutional claims.

¶ 38　　As with its equal protection analysis, the appellate court majority does not indicate whether the finding that the Violent Offender Act violates a juvenile's right to procedural due process is under the federal constitution, the Illinois Constitution, or both. In her argument in support of the appellate court's decision, M.A. references both the state constitution and the federal constitution. Although the due process clause of our state constitution may be construed independently of the federal due process clause (*People v. Molnar*, 222 Ill. 2d 495, 510 (2006)), M.A. does not argue, nor did the appellate court majority find, that the due process clause of our state constitution should be construed independently of the due process clause of the federal constitution. We find no compelling reason to interpret the Illinois due process clause to provide greater protection than its federal counterpart.

¶ 39　　M.A.'s challenge to the statute claimed both facial and "as applied" procedural due process violations. A statute is facially invalid only if there is no set of circumstances under which the statute would be valid. *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 305-06 (2008). The fact that a statute could be found unconstitutional under some circumstances does not establish its facial invalidity. *Id.* at 306. Consequently, a facial challenge to the constitutionality of a legislative enactment is the most difficult challenge to mount successfully. *Id.* at 305.

¶ 40　　An "as applied" challenge, in contrast, challenges how a statute was applied in the particular context in which the plaintiff acted or proposed to act. *Id.* at 306. In an "as applied" challenge, the facts surrounding the plaintiff's particular circumstances become relevant. *Id.* If a plaintiff prevails in an "as applied" challenge, enforcement of the statute is enjoined only against the plaintiff, while a finding that a statute is facially unconstitutional voids the statute in its entirety and in all applications. *Id.*

¶ 41　　The appellate court majority appears to have found the Violent Offender Act to be both facially unconstitutional and unconstitutional as applied to M.A. The appellate court found that "the Act, with its mandated registry for 10 years and its requirement that juvenile offenders automatically register as adults upon turning 17, denies minors procedural due process." 2014 IL App (1st) 132540, ¶ 53. The appellate court, however, also addressed the procedural due process violation in terms of M.A.'s specific circumstances. Because a finding that the statute is constitutional as applied to M.A. would necessarily compel a finding that the statute is

constitutional on its face, we will first consider whether the Violent Offender Act is unconstitutional as applied.

¶ 42    As noted, with regard to juvenile offenders, the Violent Offender Act provides that until the juvenile turns 17, dissemination of registry information is limited. See 730 ILCS 154/100 (West 2012). However, upon turning 17, a juvenile is required to register as an adult, meaning that he or she is subject to community notification on the Violent Offender Against Youth Registry's public website for the remainder of the 10-year period of registration. See 730 ILCS 154/5(a) (West 2012); 20 Ill. Adm. Code 1283.50(j) (2010) ("A person who has been adjudicated a juvenile delinquent for an act that, if committed by an adult, would be a violent offense against youth shall register as an adult violent offender against youth within 10 days after attaining 17 years of age. Upon registering as an adult, the juvenile offender will be placed on the Illinois State Police Violent Offender Against Youth Registry website after an authorization letter is signed by the offender and received by the Illinois State Police.").

¶ 43    The appellate court majority found that the Violent Offender Act violated a juvenile's right to due process because the statute mandates that juveniles automatically register as adults upon turning 17, regardless of the circumstances of the offense. 2014 IL App (1st) 132540, ¶ 53. Further, the statute requires juveniles to register as adults with the attendant inclusion of their information on the statewide public registry, without any individualized assessment of whether the juvenile poses any continuing risk to the public. *Id.* Moreover, adult registration may occur several years after the delinquency adjudication and is required without any opportunity for further hearing. *Id.* The appellate court majority held:

> "While the rational basis test might support an initial registration requirement for all juvenile offenders classified as 'violent offenders against youth' under the Act without an individualized assessment as to whether those minors, in fact, pose a danger to the public (particularly in light of the limited dissemination of registration information), it does not likewise justify the requirement that all such offenders automatically register as adults, with the ensuing disclosure of registration information to the public at large. This is particularly true given that no hearing is conducted prior to mandated adult registration." *Id.* ¶ 54.

¶ 44    In addressing this issue, we find the United States Supreme Court's decision in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1, 8 (2003), to be controlling. There, the Court held that a party who asserts a right to a hearing under the due process clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme. At issue in that case was a due process challenge to the provisions of Connecticut's sex offender registry law which required the Department of Public Safety to post sex offender registry information on the internet and to make the registry available to the public.

¶ 45    A convicted sex offender argued that the registration law violated his right to due process because he was "not a ' "dangerous sexual offender" ' and that the Connecticut law 'deprives him of a liberty interest—his reputation combined with the alteration of his status under state law—without notice or a meaningful opportunity to be heard.' " *Id.* at 6 (quoting *Doe v. Dep't of Public Safety ex rel. Lee*, 271 F.3d 38, 45-46 (2d Cir. 2001)). The district court and the court of appeals agreed that the due process clause entitled class members "to a hearing 'to determine whether or not they are particularly likely to be currently dangerous before being

labeled as such by their inclusion in a publicly disseminated registry.' " *Id.* (quoting *Doe v. Dep't of Public Safety ex rel. Lee*, 271 F.3d at 62.

¶ 46    The United States Supreme Court reversed the lower courts, holding that even if the respondent had been deprived of a liberty interest, due process did not entitle the respondent to a hearing to establish a fact that was not material under the Connecticut statute. *Id.* at 7. That was because the law's requirements for registration turned on the fact of the offender's conviction alone, a fact that the convicted offender had already had a procedurally safeguarded opportunity to contest. *Id.* No other fact was relevant to the disclosure of the registrants' information, and the website contained a disclaimer explicitly stating that no determination had been made that any individual included in the registry was currently dangerous. *Id.* The Court held:

> "In short, even if respondent could prove that he is not likely to be currently dangerous, Connecticut has decided that the registry information of *all* sex offenders—currently dangerous or not—must be publicly disclosed. Unless respondent can show that that *substantive* rule of law is defective (by conflicting with a provision of the Constitution), any hearing on current dangerousness is a bootless exercise." (Emphases in original.) *Id.* at 7-8.

¶ 47    Like the Connecticut statute, the Violent Offender Act requires violent offenders against youth, including juvenile offenders, to register based upon the fact that the offender was adjudicated delinquent or convicted of an offense included within the definition of a violent offender against youth, not based on the offender's dangerousness. The only material fact, then, is the offender's conviction or adjudication of a violent offense against youth. Moreover, the Illinois State Police Murderer and Violent Offender Against Youth Registry, like the registry at issue in *Connecticut Department of Public Safety*, contains a disclaimer explicitly stating that:

> "[The Illinois State Police] has not considered or assessed the specific risk of re-offense with regard to any individual prior to his or her inclusion on this Registry and has made no determination that any individual included in this Registry is currently dangerous. Individuals included on the Registry are included solely by virtue of their conviction record, Illinois state law and proof the offense was not sexually motivated. The primary purpose of providing this information is to make the information easily available and accessible, not to warn about any specific individuals." Illinois State Police Murderer and Violent Offender Against Youth Registry, http://www.isp.state.il.us/cmvo (last visited Aug. 31, 2015).

¶ 48    Given that current dangerousness is not relevant or material to the duty to register under the Violent Offender Act, M.A. does not have a due process right to a hearing to establish a fact that is not relevant or material under Illinois law. Again, the Act requires registration solely based upon the fact of conviction or adjudication, a fact that M.A. had a procedurally safeguarded opportunity to contest during her juvenile adjudication proceedings. M.A. did not challenge her adjudication as a juvenile delinquent on appeal. Like the offender in *Connecticut Department of Public Safety*, then, M.A. received all the process to which she was due when she was adjudicated delinquent of aggravated domestic battery and aggravated battery, offenses included within the definition of a violent offender against youth. See 730 ILCS 154/5(b)(4.4) (West 2012).

- 11 -

¶ 49    M.A.'s adjudication for aggravated domestic battery and aggravated battery were sufficient to require her to register as a violent offender against youth. The Violent Offender Act, therefore, does not violate procedural due process as applied to M.A. Because the Violent Offender Act does not violate procedural due process as applied to M.A., it follows that the Act also is not facially unconstitutional.

¶ 50    Finally, we turn to M.A.'s arguments in support of her request for cross-relief. M.A. argues that the appellate court erred in finding that the Violent Offender Act did not violate substantive due process.

¶ 51    The appellate court held that the decision in *In re J.W.*, 204 Ill. 2d 50 (2003), compelled the conclusion that the Violent Offender Act's requirements passed the rational basis test, defeating M.A.'s substantive due process challenge. The court stated:

> "Just as our supreme court [in *In re J.W.*] concluded that there is a rational relationship between the registration requirements for sex offenders, regardless of age, and the protection of the public from those offenders [citation], the same reasoning compels the finding that a rational relationship exists in the context of this case. The public requires protection from violent offenders against youth; this is true whether the offender is an adult or a juvenile. The degree of protection required may vary given, among other things, the age of the offender at the time the offense is committed. In recognition of this fact and consistent with the Juvenile Court Act's statutory confidentiality provisions (705 ILCS 405/1-7, 1-8 (West 2012)), the legislature has deemed it appropriate to limit those who have access to a juvenile offender's information contained on the registry, while making the same information for adult offenders widely available. Given our conclusion that under the rationale of *In re J.W.*, the Act's registration requirements are rationally related to public safety, we reject M.A.'s substantive due process challenge." 2014 IL App (1st) 132540, ¶ 48.

¶ 52    In this court, M.A. argues that the Violent Offender Act violates substantive due process both on its face and as applied. Again, because a facial challenge to a statute must fail if any situation exists where the statute could be validly applied (*People v. Davis*, 2014 IL 115595, ¶ 25), we first address M.A.'s claim that the Act violates substantive due process as applied to her.

¶ 53    As a preliminary matter, we note that here too, although M.A. cited both the federal and the state due process clauses, the appellate court did not indicate whether its holding was based on the state due process clause, the federal due process clause, or both. In this court, M.A. does not argue that the state due process clause provides greater protection than that provided by the federal constitution. Absent any argument to the contrary, we again find no compelling reason to construe the state due process clause independently of its federal counterpart with regard to M.A.'s substantive due process claim.

¶ 54    M.A. claims that the Violent Offender Act violates substantive due process as applied to her because she was only 13 years and 3 months old when the offense took place, it was her first contact with the juvenile justice system, no one ever found her to be a threat to society, and the details of her offense strongly suggest that her offense was an act of desperation and not an accurate reflection of her threat to society as a whole. In addition, even if M.A. was a serious threat to society, by the time M.A. is required to register as an adult, 3 years and 9 months after the offense giving rise to her adjudication, there is no basis to conclude that M.A. will remain

such a threat. M.A. claims that the Violent Offender Act's stated goal of protecting the public is not served by automatically requiring a child such as M.A. to begin registering as an adult violent offender at the same time she is reaching the age where she will be trying to secure employment and go to college.

¶ 55    As the appellate court found, the rational basis test applies to M.A.'s substantive due process challenge. A statute will be upheld under the rational basis test as long as it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. *People v. Hollins*, 2012 IL 112754, ¶ 15. In applying the rational basis test, a court must first ascertain the statute's public purpose in order to determine whether the statute's provisions reasonably implement that purpose. *Id.* ¶ 18. A statute will be upheld where the statute bears a reasonable relationship to the public interest to be served and the means adopted are a reasonable method of accomplishing the desired objective. *In re J.W.*, 204 Ill. 2d at 67. A statute need not be the best means of accomplishing the stated objective. *Id.* at 72. Courts will not second guess the wisdom of legislative enactments or dictate alternative means to achieve the desired result. *Id.* If there is any conceivable set of facts that show a rational basis for the statute, the statute will be upheld. *People v. Johnson*, 225 Ill. 2d 573, 585 (2007).

¶ 56    The purpose of the Violent Offender Act is to protect the public from violent offenders against youth. Requiring registration of individuals convicted or adjudicated of an offense constituting a violent offense against youth is a reasonable method of accomplishing the Act's objective to protect the public. To that end, the legislature has deemed it appropriate to impose a 10-year registration requirement on most violent offenders against youth. However, with regard to juvenile offenders, the legislature deemed it appropriate to limit those who have access to a juvenile violent offender's information contained on the registry until the juvenile turns 17 years old. Limiting access to a juvenile offender's information until the juvenile is 17 years old is a reasonable means of accomplishing the purpose the legislature sought to accomplish in enacting the statute—protecting the public from violent offenders against youth—while maintaining the Juvenile Court Act's statutory confidentiality provisions (see 705 ILCS 405/1-7, 1-8 (West 2012)).

¶ 57    As applied to M.A., we note that in arguing that the Violent Offender Act violates her right to substantive due process, M.A. downplays her offenses as "an act of desperation," pointing to her difficult upbringing as motivating her actions. However, we are not called upon to reweigh the evidence supporting M.A.'s adjudication or the validity of the adjudication. What is relevant for purposes of the instant analysis is that M.A. was ordered to register under the Act based upon her adjudications for aggravated battery and aggravated domestic battery.

¶ 58    Aggravated battery is defined as:

> "(a) Offense based injury. A person commits aggravated battery when, in committing a battery, other than by the discharge of a firearm, he or she knowingly does any of the following:
>
> > (1) Causes great bodily harm or permanent disability or disfigurement." 720 ILCS 5/12-3.05(a)(1) (West 2012).

This offense is a Class 3 felony when committed by an adult. See 720 ILCS 5/12-3.05(h) (West 2012).

- 13 -

¶ 59    Aggravated domestic battery is defined as:

> "(a) A person who, in committing a domestic battery, knowingly causes great bodily harm, or permanent disability or disfigurement commits aggravated domestic battery." 720 ILCS 5/12-3.3(a) (West 2012).

Aggravated domestic battery is a Class 2 felony when committed by an adult. See 720 ILCS 5/12-3.3(b) (West 2012).

¶ 60    Given that the charges for which M.A. is required to register would be felonies if M.A. committed those acts as an adult, along with the fact that those charges require a finding that the offender caused "great bodily harm, permanent disability, or disfigurement," we agree with the appellate court that there is a rational relationship between M.A.'s registration and the protection of the public. Consequently, we find that the Violent Offender Act does not violate M.A.'s right to substantive due process as applied. For that reason, the Violent Offender Act also is not facially unconstitutional. We affirm the appellate court's finding that the Act does not violate substantive due process.

¶ 61    As a final matter, we note that the appellate court majority, M.A., and the *amicus*, spend a significant amount of time pointing out M.A.'s difficult upbringing, as well as the facts surrounding the incident giving rise to M.A.'s adjudication as a delinquent minor and subsequent thereto. The parties and the appellate court majority point to those facts in support of a finding that the Violent Offender Act's registration requirements are unconstitutional as applied to M.A.

¶ 62    While we do not minimize the environment in which M.A. was raised, which likely did play a role in her adjudication as a delinquent minor, the considerations raised by the parties and the appellate court majority are not relevant to our constitutional analysis. The facts giving rise to M.A.'s adjudication are relevant to a determination of guilt or innocence. M.A. has not challenged on appeal the sufficiency of the evidence leading to her adjudication as a delinquent minor; therefore, there is no need for this court to reweigh the evidence against M.A. The legislature deliberately chose to make an individual's conviction or adjudication the basis for requiring a violent offender against youth to register under the Violent Offender Act. Registration under the Act is offense based, rather than offender based.

¶ 63    We find Justice Pucinski's discussion on this point to be well taken. In dissenting in part to the majority's finding of unconstitutionality, Justice Pucinski stated:

> "I also do not agree with reweighing the evidence in M.A.'s case to find the Act unconstitutional. While I do have sympathy for M.A.'s background, the fact remains that the trial court heard all the testimony and observed her and was in the best position to determine her guilt or innocence and any mitigating factors. For us to reweigh the evidence before the trial judge and the trial judge's determination that M.A. in fact was guilty of stabbing her brother is improper. While the majority finds it understandable that M.A. stabbed her brother due to her toxic environment and abuse at the hands of her brother, there are many abused children who do *not* resort to violence. The legislature is well within its authority in determining that juveniles who commit violence against other children should register as adults when they turn 17, if they indeed committed the violent offense. Protecting other innocent children is a legitimate state interest, and requiring that juvenile violent offenders register as adults when they turn 17 to complete the 10-year mandated registration period is rationally related to that

state interest." (Emphasis in original.) 2014 IL App (1st) 132540, ¶ 105 (Pucinski, J., concurring in part and dissenting in part).

¶ 64    The appellate court majority, M.A. and the *amicus* also rely heavily on amendments to the Registration Act in support of a finding that the Violent Offender Act's registration requirements are unconstitutional. We did not address those amendments in our analysis because they were not relevant to that analysis. Given the significance placed upon those amendments by the appellate court, M.A. and the *amicus*, however, we will briefly address the amendments.

¶ 65    At the same time that the legislature was considering House Bill 4193, which became the Violent Offender Act, the legislature also was considering House Bill 2067, which would amend the Registration Act. Senator Raoul explained that House Bill 2067:

> "answers the invitation of the Illinois Supreme Court in the case of In re J.W., where in dicta, Justice McMorrow, while upholding that juvenile sex offenders—juveniles classified as sex offenders should—can be required to register as adults, indicated that the Legislature should address the situation of different types of offenses. And this is really targeted towards the type of the kind of Romeo and Juliet cases where—and—and there's no such thing as consensual sex for teenagers. And so in—in cases where a sixteen-year-old and a fifteen-year-old engage in consensual sex, one of those two, or perhaps both of them, could be required to register as a sex offender once they reach the age of majority. What House Bill 2067 proposes to do is to remove the current state of a law of one case fits all and—and require—and require that the court address cases on a case-by-case basis, so we don't have the situation where teenagers engaged in consensual sex are thereafter required to register as sex offenders." 94th Ill. Gen. Assem., Senate Proceedings, Mar. 30, 2006, at 48 (statements of Senator Raoul).

Of note is the fact that at the same time the legislature was passing the Violent Offender Act, with no provisions for a court to address registration for juveniles on a case-by-case basis, it was considering such a provision for juveniles required to register under the Registration Act. This at least suggests that the legislature deliberately chose not to include the proposed Registration Act amendments concerning juveniles in the text of the Violent Offender Act.

¶ 66    House Bill 2067 was passed by the legislature, but was vetoed by the Governor. Subsequently, proposed amendments to the Registration Act were raised again in Senate Bill 121. The amendments to the Registration Act proposed in Senate Bill 121: eliminated the provision that a juvenile delinquent be required to register as an adult within 10 days of turning 17 years old; added that a minor adjudicated delinquent of a sex offense which would be a felony if the minor was an adult can petition for the termination of the term of registration after five years of registration; and added that a minor adjudicated delinquent of a sex offense which would be a misdemeanor if the minor was an adult can petition for the termination of the term of registration after two years of registration. Senate Bill 121 overrode the Governor's veto, and the amendments to the Registration Act were codified in section 3-5 of the statute (730 ILCS 150/3-5 (West 2008)).

¶ 67    Recently, the court in *In re S.B.*, 2012 IL 112204, ¶ 29, addressed the amendments, stating:

> "In enacting the termination provisions of section 3-5, the General Assembly recognized that, in many instances, juveniles who engage in sexually inappropriate behavior do so because of immaturity rather than predatory inclinations. The purpose

- 15 -

of the termination provisions of section 3-5 is to afford juveniles the opportunity to demonstrate this is true in an individual case, and to prove that they do not pose a safety risk to the community."

¶ 68 The appellate court, M.A. and the *amicus* point to the amendments to the Registration Act as proof that the registration provisions of the Violent Offender Act, which contain no similar provisions, are unconstitutional. What is overlooked in this claim is that a version of the Registration Act without the amendments was held not to violate a 12-year-old sexual offender's right to substantive due process even when that 12-year-old sexual offender was required to register for life as a result of his adjudication as a sexual predator. See *In re J.W.*, 204 Ill. 2d 50 (2003). The fact that the legislature later decided to amend the Registration Act to provide additional protections to juvenile offenders does not thereby render the prior version of the Act unconstitutional. Statutes do not confer constitutional rights. *People v. Mitchell*, 189 Ill. 2d 312, 329 (2000).

¶ 69 Moreover, we cannot assume that the considerations animating the amendments to the Registration Act are also present in the case of juvenile violent offenders. In amending the Registration Act, the legislature was concerned that the statute had included consensual and immature conduct, as well as more serious sexual offenses, in its definition of a sexual offender. The Violent Offender Act, in contrast, encompasses offenses targeting children that the legislature has deemed violent offenses. The fact that the legislature expressly defined the enumerated offenses to be violent offenses against children weighs against a claim that the statute targets behaviors similar to the consensual and immature behaviors motivating the amendments to the Registration Act.

¶ 70 In any event, "the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines ***." *City of New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (*per curiam*). "A statute is not invalid under the Constitution because it might have gone farther than it did." *Roschen v. Ward*, 279 U.S. 337, 339 (1929). It is for the legislature, then, and not this court, to decide whether the Violent Offender Act's registration provisions should be amended with regard to juveniles in a manner similar to the Registration Act's registration provisions.

¶ 71 For all the foregoing reasons, we affirm the appellate court's finding that the Violent Offender Act does not violate substantive due process. We reverse the appellate court's finding that the Violent Offender Act violates equal protection and procedural due process. We also find that the trial court properly required M.A. to register under the Act and therefore reverse the appellate court's order vacating the trial court's order.

¶ 72 Appellate court affirmed in part and reversed in part.

¶ 73 Circuit court affirmed.

¶ 74 JUSTICE BURKE, specially concurring:

¶ 75 In the case at bar, M.A., a 13-year-old girl, was adjudicated delinquent of several offenses arising out of an altercation with her older brother. It was M.A.'s first referral to juvenile court. The trial court sentenced M.A. to 30 months' probation with certain conditions, one of which was to register under the Illinois Murderer and Violent Offender Against Youth Registration

- 16 -

Act (730 ILCS 154/1 *et seq.* (West 2012)). M.A. contends that the Act's mandatory registration requirements violate substantive and procedural due process and result in a denial of equal protection. This court rejects M.A.'s contentions and upholds the constitutionality of the Act as applied to juvenile violent offenders. While I am compelled to agree with the court's determination as to the Act's constitutionality, I write separately to express my concern that the Act fails to take into account the unique characteristics of juveniles and to urge the legislature to reevaluate the Act's requirements as applied to juvenile offenders.

¶ 76    The Act requires juveniles adjudicated delinquent for certain enumerated offenses to register as violent offenders against youth for 10 years following adjudication. 730 ILCS 154/5(a), 10 (West 2012). Upon registration with the local law enforcement agency, the agency must disclose the juvenile's identifying information to the local school board; the principal and guidance counselor at the offender's school; and all child care facilities, institutions of higher education, and libraries in the county in which she is required to register or is employed. 730 ILCS 154/95(a-2), (a-3), 100(b) (West 2012). Any law enforcement agency also has the discretion to disclose the offender's name, address, date of birth, offense, photograph, employment information, and any "other such information that will help identify the violent offender" to "any person likely to encounter a violent offender." 730 ILCS 154/95(b)(3) (West 2012). Upon turning age 17, a juvenile violent offender is required to register as an adult, and her identifying information is made accessible to the public via a website. 730 ILCS 154/85(a), (b) (West 2012). The Act does not provide an opportunity for a hearing to assess a juvenile's risk of violence to the general public, nor does it provide a juvenile offender an opportunity to seek removal from the registry prior to the expiration of the 10-year registration period.

¶ 77    In contrast to the Murderer and Violent Offender Against Youth Registration Act, the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2012)) does not require juveniles to register as adults upon reaching age 17. Rather, juvenile sex offenders are allowed to remain registered as juveniles for the entirety of their registration term. See *People ex rel. Birkett v. Konetski*, 233 Ill. 2d 185, 203 (2009) (citing Pub. Act 95-658, § 5 (eff. Oct. 11, 2007) (amending 730 ILCS 150/2(A), 3(a))). Thus, information about a juvenile offender's identity and offense, even after she reaches the age of majority, is provided only to a limited number of people and will never appear on the adult registry. 730 ILCS 152/121 (West 2012). Another procedural protection afforded to juvenile sex offenders is the right to petition for termination from the registry after five years for a felony or two years for a misdemeanor. 730 ILCS 150/3-5(c) (West 2012). Juveniles have the right to be represented by counsel at the hearing on a petition for termination. Following the hearing, the court may terminate the juvenile's registry requirement if it finds by a preponderance of the evidence that the juvenile poses no risk to the community. 730 ILCS 150/3-5(d) to (f) (West 2012). In making this determination, the court may consider the juvenile's age; past offenses; risk assessment; evidence of rehabilitation; and mental, physical, educational and social history, as well as any victim impact statements. 730 ILCS 150/3-5(e) (West 2012).

¶ 78    Significantly, the opportunity to petition for termination from the sex offender registry is not limited to nonviolent offenses or to juveniles who engage in sexually inappropriate behavior which would otherwise be consensual. Section 3-5, which sets forth the procedure for juvenile sex offenders to petition for early termination, explicitly applies to "all cases" where juveniles are adjudicated delinquent of qualifying offenses, even violent sexual offenses. 730

- 17 -

ILCS 150/3-5(a), 2(B) (West 2012) (qualifying offenses include criminal sexual assault, aggravated criminal sexual assault, criminal sexual abuse, aggravated criminal sexual abuse, and aggravated kidnapping).

¶ 79    I recognize that the disparate treatment of juvenile offenders under the registration statutes does not rise to the level of an equal protection violation because the two groups of juvenile offenders are not similarly situated in all relevant respects. Nevertheless, in my view, it is illogical to allow juveniles adjudicated delinquent of violent sexual offenses to petition for removal from the sex offender registry while disallowing the same procedure for juveniles adjudicated delinquent of violent offenses which do not involve a sexual component. No other state has separate registration laws which treat juvenile violent offenders more harshly than juvenile sex offenders.

¶ 80    The 2007 amendments to the Sex Offender Registration Act "significantly reduce[d] the impact of the minor's registration requirement" by eliminating the requirement of mandatory registration on the adult registry upon turning age 17 and allowing a minor to petition for termination of his registration after five years. *Konetski*, 233 Ill. 2d at 203. In making these changes, the General Assembly recognized that juveniles who commit sexual offenses may do so "because of immaturity rather than predatory inclinations." *In re S.B.*, 2012 IL 112204, ¶ 29. This court has found that minors often make poor decisions based on a lack of experience, maturity, and judgment, all of which can change for the better as the minor ages and matures. See *Hope Clinic for Women, Ltd. v. Flores*, 2013 IL 112673, ¶¶ 64, 86. Our history is "replete with laws and judicial recognition that minors, especially in their earlier years, generally are less mature and responsible than adults." (Internal quotation marks omitted.) *Id.* ¶ 64. Minors' "lack of maturity and an underdeveloped sense of responsibility" may lead to "recklessness, impulsivity, and heedless risk-taking." (Internal quotation marks omitted.) *Miller v. Alabama*, 567 U.S. ___, ___, 132 S. Ct. 2455, 2464 (2012). Moreover, children are more vulnerable to negative influences, particularly from their families and peers. *Id.* at ___, 132 S. Ct. at 2464. "[A] child's character is not as well formed as an adult's; his traits are less fixed and his actions less likely to be evidence of irretrievabl[e] deprav[ity]." *Id.* at ___, 132 S. Ct. at 2464.

¶ 81    In light of the foregoing character traits of juvenile offenders, I invite the legislature to reexamine the Murderer and Violent Offender Against Youth Registration Act with the same level of scrutiny that it applied to the Sex Offender Registration Act when it amended that act in 2007. Ameliorating the Act's requirements for juvenile offenders would better harmonize "[t]he public safety concerns which animate the registration and notification laws" with "our traditional understanding of the need to protect and rehabilitate the young citizens of this state." *In re J.W.*, 204 Ill. 2d 50, 84 (2003) (McMorrow, J., specially concurring, joined by Freeman, J.).

¶ 82    JUSTICES FREEMAN, KILBRIDE, and THEIS join in this special concurrence.