# Illinois Official Reports

## Appellate Court

---

### *People v. Pepitone*, 2017 IL App (3d) 140627

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARC A. PEPITONE, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-14-0627 |
| Filed | February 10, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CM-844; the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Reversed. |
| Counsel on Appeal | Michael J. Pelletier and Katherine M. Strohl (argued), of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>James Glasgow, State's Attorney, of Joliet (Mark A. Austill (argued), of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE McDADE delivered the judgment of the court, with opinion.<br>Presiding Justice Holdridge concurred in the judgment and opinion.<br>Justice Carter dissented, with opinion. |

**OPINION**

¶ 1    The defendant, Marc A. Pepitone, was convicted of being a child sex offender in a public park (720 ILCS 5/11-9.4-1(b) (West 2012)) and was sentenced to 24 months of conditional discharge, 100 hours of public service, and $400 in fines and costs. On appeal, Pepitone argues that (1) section 11-9.4-1(b) is unconstitutional on its face because it bears no reasonable relationship to protecting the public and (2) section 11-9.4-1(b) violates the *ex post facto* clause because his prior conviction occurred before section 11-9.4-1(b) took effect. We hold that section 11-9.4-1(b) is facially unconstitutional and therefore reverse the circuit court's judgment.

¶ 2                                   FACTS

¶ 3    On March 8, 2013, Bolingbrook police officer Steven Alexander was on patrol in Indian Boundary Park, which was maintained by the Bolingbrook Park District. Alexander noticed a green van parked across three parking spots, so he ran the registration on the vehicle. Alexander learned that the vehicle was registered to Pepitone, who had previously been convicted of a child sex offense. While Alexander was looking in the vehicle to determine if the defendant was inside, Pepitone returned with the dog he had been walking and asked the officer if something was wrong with the vehicle. Alexander told Pepitone that he was forbidden to be on park property. Pepitone stated that he was unaware of that ban. Alexander ultimately arrested Pepitone for the criminal offense of being a sex offender in a public park (720 ILCS 5/11-9.4-1(b) (West 2012)). A first violation of the statute is a Class A misdemeanor; a second or subsequent violation is a Class 4 felony (720 ILCS 5/11-9.4-1(d) (West 2012)).

¶ 4    Pepitone was charged and filed a motion to dismiss alleging the statute was unconstitutional. The motion was denied.

¶ 5    At the jury trial on April 30, 2014, in addition to Alexander's testimony, the State introduced a certified copy of Pepitone's 1999 conviction for predatory criminal sexual assault of a child, for which he had been sentenced to six years of imprisonment. The jury found him guilty of being in the park, and he was sentenced to 24 months of conditional discharge, required to perform 100 hours of community service, and ordered to pay specified fines.

¶ 6    Pepitone moved for a new trial and reconsideration of the community service portion of his sentence. The circuit court denied the motion for a new trial and granted the motion to reconsider sentence. The defendant then appealed.

¶ 7                                  ANALYSIS

¶ 8    Pepitone's first argument on appeal is that section 11-9.4-1(b) is unconstitutional on its face because it bears no reasonable relationship to protecting the public. He has not alleged that a fundamental liberty interest is affected, and he seeks rational basis review. He states:

      "the specific issue this Court must address under this argument is whether an all-out banishment, of all child sex offenders, from all public parks, including forest preserves and all conservation areas, at all times, regardless of the presence or even likely presence of persons under the age of 18, or of any person whatsoever, and for all remaining years of a child sex offender's life, is a reasonable means of achieving the

legislature's stated goal of 'protect[ing] users of public parks from child sex offenders and sexual predators.' "

His claim is that section 11-9.4-1(b) sweeps too broadly and must, therefore, be struck down.

¶ 9    Pepitone alleges a violation of substantive due process. Our supreme court has stated:

"When confronted with a claim that a statute violates the due process guarantees of the United States and Illinois Constitutions, courts must first determine the nature of the right purportedly infringed upon by the statute. [Citation.] Where the statute does not affect a fundamental constitutional right, the test for determining whether the statute complies with substantive due process is the rational basis test. [Citation.] To satisfy this test, a statute need only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute. [Citation.] Pursuant to this test, a statute will be upheld if it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' [Citation.]" *In re J.W.*, 204 Ill. 2d 50, 66-67 (2003).

¶ 10    Section 11-9.4-1(b) of the Criminal Code of 2012 provides that "[i]t is unlawful for a sexual predator or a child sex offender to knowingly be present in any public park building or on real property comprising any public park." 720 ILCS 5/11-9.4-1(b) (West 2012). "Public park" is defined as including "a park, forest preserve, bikeway, trail, or conservation area under the jurisdiction of the State or a unit of local government." 720 ILCS 5/11-9.4-1(a) (West 2012). "Sexual predator" includes individuals who have been convicted of certain sex offenses, including predatory criminal sexual assault of a child (720 ILCS 5/11-9.4-1(a) (West 2012); 730 ILCS 150/2(E) (West 2012)), which is Pepitone's prior conviction.

¶ 11    It is clear that section 11-9.4-1(b) is meant to protect the public—especially children—from sexual predators and child sex offenders,[1] and the defendant does not dispute the existence of a legitimate government interest in this statute. The question we must answer is whether the legislature's total ban of persons previously convicted of a sex offense against a minor from all public park buildings and all public parks, as defined in the statute, at all times, without limitation, is a reasonable method of protecting the public.

¶ 12    The constitutionality of section 11-9.4-1(b) has been addressed twice before by other districts of the appellate court.[2] In *People v. Avila-Briones*, 2015 IL App (1st) 132221, the First District considered, in relevant part, a defendant's more encompassing substantive due process constitutional challenge to the Sex Offender Registration Act (730 ILCS 150/1 *et seq.* (West 2012)), the Sex Offender Community Notification Law (730 ILCS 152/101 *et seq.* (West 2012)), and several other statutes applicable to sex offenders, which included section 11-9.4-1(b). *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 1, 22. The majority of the substantive due process analysis in *Avila-Briones* concerned whether fundamental rights were involved (*id.* ¶¶ 71-80) and only included the following statement with regard to whether

[1]We note that certain minor offenders are excluded from the definition of "child sex offender" for the purposes of the statute. 720 ILCS 5/11-9.4-1(a), (b) (West 2012).

[2]Following oral argument in this case, the State sought leave to file, as additional authority, the supreme court's brand new decision in *People v. Minnis*, 2016 IL 119563. We allowed the filing, and the defendant has responded. We find the decision is not instructive in our case. *Minnis* involved a first amendment challenge subjected to intermediate basis review; it applied, with specificity, to each individual offender; and it required analysis under a completely different standard of review.

statutes like section 11-9.4-1(b) were rationally related to a legitimate state interest: "by keeping sex offenders who have committed offenses against children away from areas where children are present (*e.g.*, school property and parks) *** the legislature could have rationally sought to avoid giving certain offenders the opportunity to reoffend" (*id.* ¶ 84).

¶ 13    In *People v. Pollard*, 2016 IL App (5th) 130514, the Fifth District considered the same substantive due process constitutional challenge reviewed by the *Avila-Briones* court. *Id.* ¶¶ 1, 19. When deciding whether statutes like section 11-9.4-1(b) were rationally related to a legitimate state interest, the *Pollard* court simply adopted the above-quoted rationale from *Avila-Briones*. *Id.* ¶ 42.

¶ 14    We are not persuaded by the rationale used in *Avila-Briones* and *Pollard*, which we perceive to be incomplete and truncated analyses of the issue. While we acknowledge that under the rational basis test, "[a] statute need not be the best means of accomplishing the stated objective" and "[i]f there is any conceivable set of facts that show a rational basis for the statute, the statute will be upheld" (*In re M.A.*, 2015 IL 118049, ¶ 55), we also recognize that "[a]lthough this standard of review is quite deferential, it is not 'toothless' " (*People v. Jones*, 223 Ill. 2d 569, 596 (2006)). As our supreme court stated in *M.A.*, to pass constitutional muster under rational basis review, a statute must not be arbitrary or unreasonable. *M.A.*, 2015 IL 118049, ¶ 55.

¶ 15    Of particular significance in the disposition of this case is a line of cases from our supreme court in which statutes were stuck down on substantive due process grounds because they were found to sweep too broadly in that they criminalized innocent conduct. In *People v. Wick*, 107 Ill. 2d 62 (1985), an aggravated arson statute that did not require an unlawful purpose in setting a fire was invalidated by the supreme court. *Id.* at 66. The *Wick* court held that the statute swept too broadly because it criminalized innocent conduct; under the statute, a farmer could be prosecuted for demolishing a deteriorated barn by fire if a firefighter was standing nearby and was injured by the fire. *Id.*

¶ 16    In *People v. Zaremba*, 158 Ill. 2d 36 (1994), the supreme court struck down a theft provision that criminalized obtaining or controlling property in law enforcement custody when law enforcement represents that the property was stolen. *Id.* at 39-40. The *Zaremba* court held that the provision did not require a culpable mental state and therefore criminalized innocent conduct (*id.* at 42), including, as the defendant pointed out, an evidence technician who was given stolen property by law enforcement for safekeeping (*id.* at 38-39). Thus, the court held that the statute was not reasonably related to its purpose of aiding law enforcement officers attempting to break up fencing operations. *Id.* at 42.

¶ 17    The supreme court struck down a statute that imposed absolute liability, *inter alia*, on anyone who damaged or removed any part of a vehicle without permission or who tampered with or entered a vehicle without permission to do so. *In re K.C.*, 186 Ill. 2d 542, 545-50 (1999). The court held that the statute criminalized innocent conduct, including, for example, a person who entered someone else's vehicle simply to turn off headlights that had been left on, people who decorated a bride or groom's car for a wedding, and a person who got into a car accident. *Id.* at 552-53. In so ruling, the court acknowledged that "a statute violates the due process clauses of both the Illinois and the United States Constitutions if it potentially subjects wholly innocent conduct to criminal penalty without requiring a culpable mental state." *Id.* at 551.

¶ 18    In *People v. Wright*, 194 Ill. 2d 1 (2000), the supreme court considered a statute that criminalized the knowing failure to maintain records related to the acquisition and disposition of vehicles and vehicle parts. *Id.* at 21. The court held that the statute criminalized innocent conduct, including a lapse in record keeping that was due to disability, family crisis, or incompetence and struck it down. *Id.* at 28.

¶ 19    The supreme court also invalidated a statute that criminalized operating a vehicle that an individual knew contained a false or secret compartment or installing, creating, building, or fabricating such a compartment. *People v. Carpenter*, 228 Ill. 2d 250, 268 (2008). The court held that the statute criminalized innocent conduct because while it was aimed at punishing people who concealed firearms or contraband in false or secret compartments, it did not require the contents of the compartment to be illegal. *Id.* at 269. In so ruling, the court noted that the intent to conceal something from law enforcement need not entail illegal conduct and that individuals have a reasonable expectation of privacy with regard to their possessions and the containers in which those possessions are kept. *Id.* at 269-70.

¶ 20    These cases, while very different in their facts, are significant for our purposes because the statutes at issue, like section 11-9.4-1(b), contain no culpable mental state. They also reach countless types of innocent conduct, much like walking a dog as Pepitone was doing at the time he was arrested. In addition, the instant statute cannot be reasonably construed as *aimed* at preventing a substantial step toward the commission of a sex offense against a child or any offense that would result in an individual qualifying as a sexual predator (see 730 ILCS 150/2(E) (West 2010)). Mere presence in a public park building or public park, without more, is not unlawful conduct.[3]

¶ 21    Further, the legislature has attempted to actually fit statutes in other instances within the purview of their stated government interest, including the related predecessor provision to the statute at issue in this case. The abandoned provision read:

> "It is unlawful for a child sex offender to knowingly be present in any public park building or on real property comprising any public park *when persons under the age of 18 are present in the building or on the grounds and to approach, contact, or communicate with a child under 18 years of age*, unless the offender is a parent or guardian of a person under 18 years of age present in the building or on the grounds." (Emphasis added.) 720 ILCS 5/11-9.4(a) (West 2010) (repealed by Pub. Act 96-1551 (eff. July 1, 2011)).

Without commenting on the constitutionality of this and other similar statutes, we note that at least the predecessor provision actually attempted to tie the child sex offender's presence to times when children were also present. See also *People v. Stork*, 305 Ill. App. 3d 714, 722 (1999) (holding that a statute prohibiting child sex offenders from being in school zones without permission proscribed only that specific conduct and did not reach innocent conduct as well). The legislature made no such attempt in section 11-9.4-1(b). The predecessor statute not

---

[3]We will not address it because the defendant has not raised it, but we note that there may also be potential eighth amendment problems with section 11-9.4-1(b) based on the punishment of status, as opposed to the punishment of conduct. See *Robinson v. California*, 370 U.S. 660, 666 (1962); *Powell v. Texas*, 392 U.S. 514, 532-34 (1968); *Doe v. City of Lafayette*, 377 F.3d 757, 782-84 (7th Cir. 2004) (Williams, J., dissenting, joined by Rovner and Wood, JJ.).

only limited the prohibition against being in the park to times when children are present on the premises, it also required that the offender "approach, contact, or communicate with" the child.

¶ 22 By contrast, the sweep of the current iteration of the statutory prohibition is extraordinary. At most, section 11-9.4-1(b) could be premised on a vague notion that a child or other "target" may be present in a public park building or on public park property. But the presence of such a person in a public park building or public park is certainly not guaranteed, and, in light of the particular circumstances, may not even be likely. Section 11-9.4-1(b) is an outright ban on all individuals with certain sex offense convictions from public park buildings and public park property without any requirement that anyone—particularly a child—be actually, or even probably, present. The statute also obviously makes no attempt to assess the dangerousness of a particular individual, which is the major distinguishing factor between this case and cases such as *Doe v. City of Lafayette*, 377 F.3d 757, 773-74 (7th Cir. 2004), in which the defendant was the only individual banned from a park and the banishment occurred only after the defendant had admitted to being at a park and having sexual urges toward minors. Rather, the statute places individuals who are highly unlikely to recidivate in the same category as serial child sex offenders.

¶ 23 Further, the statute also criminalizes substantial amounts of innocent conduct, including the walking of a dog. As appellate counsel for the defendant pointed out during oral arguments, the list of activities that routinely occur in public park buildings or on public park property, and in which individuals subject to this statute's ban cannot partake is extensive. These can include attending concerts, picnics, rallies, and Chicago Bears games at Soldier Field; or expeditions to the Field Museum, the Shedd Aquarium, the Art Institute, the Adler Planetarium, or the Museum of Science and Industry, all of which are public buildings on park land; bird-watching; photography; hunting; fishing; swimming at a public beach; walking along riverwalks; cycling on bike trails; hiking at Starved Rock; and the list goes on and on. We believe that this statute contains the type of overly broad sweep that doomed the statutes in *Wick*, *Zaremba*, *K.C.*, *Wright*, and *Carpenter*. As our supreme court stated in *Wright*, "statutes that potentially punish innocent conduct violate due process principles because they are not reasonably designed to achieve their purposes." *Wright*, 194 Ill. 2d at 25.

¶ 24 Accordingly, we hold that section 11-9.4-1(b) is facially unconstitutional because it is not reasonably related to its goal of protecting the public, especially children, from individuals fitting the definition of a child sex offender or a sexual predator.[4] See, *e.g.*, *People v. Falbe*, 189 Ill. 2d 635, 640 (2000) (holding that a "statute must be reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare"). Nor is it drafted in such a way as to effect that goal without arbitrarily stripping a wide swath of innocent conduct and rights he has as a citizen and taxpayer from a person who

[4]An example of the tenuous link between public parks and sex offenses committed by strangers against children can be seen in reports from the United States Bureau of Justice Statistics; for example, in a study published in 2000, 77% of sexual assaults against minors occurred in a residence and of the 23% that occurred outside a residence, the most common locations "were roadways, fields/woods, schools, and hotels/motels." Howard N. Snyder, Nat'l Center for Juv. Just., *Sexual Assault of Young Children as Reported to Law Enforcement: Victim, Incident, and Offender Characteristics* 6 (2000), *available at* http://www.bjs.gov/content/pub/pdf/saycrle.pdf. In addition, only 7% of sexual assaults of minors were perpetrated by strangers. *Id.* at 10.

has paid the penalty for his crime and is compliant with "collateral consequences" requirements established by the General Assembly.

¶ 25 Our ruling on the defendant's first argument obviates the need to address his second argument that section 11-9.4-1(b) violates the *ex post facto* clause.

¶ 26                                          CONCLUSION

¶ 27 The judgment of the circuit court of Will County is reversed.

¶ 28 Reversed.

¶ 29 JUSTICE CARTER, dissenting.

¶ 30 I respectfully dissent from the majority's decision in the present case. I would find that section 11-9.4-1(b) of the Criminal Code of 2012 (Code) (720 ILCS 5/11-9.4-1(b) (West 2012)) is not facially unconstitutional. I would, therefore, affirm the trial court's judgment.

¶ 31 In its analysis, the majority cites the decisions on this issue from two other districts of the appellate court in the *Avila-Briones* case and the *Pollard* case. The appellate court in those cases found that section 11-9.4.1(b) of the Code did not violate substantive due process and was not facially unconstitutional. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 86, 94; *Pollard*, 2016 IL App (5th) 130514, ¶¶ 43-44. I would follow the same analysis here and would reach the same conclusion. In my opinion, and contrary to the decision of the majority, the means adopted in the section 11-9.4-1(b) are a reasonable method of accomplishing the legislature's desired objective of protecting the public from sex offenders. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84; *Pollard*, 2016 IL App (5th) 130514, ¶ 42.

¶ 32 As the majority itself notes, to satisfy the rational basis test, the means adopted in the statute do not have to be the best means of accomplishing the legislature's objectives. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶¶ 83-84; *Pollard*, 2016 IL App (5th) 130514, ¶ 42. Rather, as long as the statute has a rational relationship to the government objectives, it is valid even if it is to some extent overinclusive or underinclusive. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 83; *Pollard*, 2016 IL App (5th) 130514, ¶ 42. By keeping sex offenders who have committed sex offenses against children away from areas where children are present, the legislature could have rationally sought to avoid giving those sex offenders an opportunity to reoffend. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84; *Pollard*, 2016 IL App (5th) 130514, ¶ 42; see also *Doe*, 377 F.3d at 773. Whether the statute could be more finely-tuned to accomplish that goal is a question for the legislature, not for the courts. See *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84; *Pollard*, 2016 IL App (5th) 130514, ¶ 42.

¶ 33 Because I believe that section 11-9.4-1(b) of the Code satisfies the requirements of substantive due process and is not facially unconstitutional, I dissent from the majority's decision in this case, which reaches the opposite conclusion. I would affirm the defendant's conviction and sentence.