# Illinois Official Reports

## Appellate Court

*People v. Jackson*, 2017 IL App (3d) 150154

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARLOS A. JACKSON, Defendant-Appellant. |
| District & No. | Third District<br>Docket No. 3-15-0154 |
| Filed | September 12, 2017 |
| Decision Under Review | Appeal from the Circuit Court of Knox County, No. 14-CF-47; the Hon. Paul L. Mangieri, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Michael J. Pelletier, Peter A. Carusona, and Emily A. Koza, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>John T. Pepmeyer, State's Attorney, of Galesburg (Patrick Delfino, Lawrence M. Bauer, and Richard T. Leonard, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.<br>Justice McDade specially concurred, with opinion.<br>Justice O'Brien concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     The defendant, Carlos A. Jackson, appeals from his conviction arguing that the charging instrument was deficient. In addition, the defendant contends that the Sex Offender Registration Act (Act) (730 ILCS 150/3(b) (West 2014)) and other related statutes applicable to sex offenders (collectively, the SORA statutory scheme) are unconstitutional.

¶ 2                                        FACTS

¶ 3     The State charged the defendant with "Unlawful Failure to Register as a Sex Offender." The information alleged:

> "defendant, a sex offender required to register every 90 days, knowingly failed to register in accordance with the provisions of the Sex Offender Registration Act with the chief of police of Galesburg, Illinois, within 90 days of his last registration on November 12, 2013, after having been convicted of Unlawful Failure to Register as a Sex Offender in Knox County Case 08 CF 402 in violation of 730 ILCS 150/3(b)."

¶ 4     At the defendant's bench trial, Becky Grohmann, an administrator for the Galesburg police department, testified that the defendant began registering with the Galesburg police department in 1996 as a result of a Michigan conviction for aggravated criminal sexual abuse. According to Grohmann, the defendant was required to register every 90 days with the Galesburg police department. To accomplish this, the defendant needed to appear at the police department and sign a form to register every 90 days. The defendant was told on the date of registration the deadline for the next 90-day period. The defendant registered on November 12, 2013, and signed a sex offender registration form with the police department. The defendant was required to register again by February 10, 2014. The defendant failed to register before February 10, 2014, and was arrested on February 17, 2014, when he appeared at the police station to register.

¶ 5     The November 12, 2013, sex offender registration form was admitted into evidence. The form includes a list of duties that the offender is required to initial. One duty is that the defendant was required to "register" again in person with the police department within 90 days. The defendant's initials appear next to this duty. The form includes a line bearing the defendant's signature after the statement, "I have read and/or had read to me, the above requirements. It has been explained to me and I understand my duty to register next on or before 02-10-2014."

¶ 6     The defendant testified on his own behalf. The defendant admitted that he failed to register by February 10, 2014, because he believed he had a 10-day grace period.

¶ 7     Ultimately, the circuit court found the defendant guilty and sentenced the defendant to three years' imprisonment.

¶ 8                                      ANALYSIS

¶ 9     On appeal, the defendant argues that his conviction is void because the State failed to charge him with an offense. The defendant also argues that the SORA statutory scheme is unconstitutional. We discuss each argument in turn.

¶ 10                                    I. The Charging Instrument

¶ 11        The defendant argues deficiencies in the charging instrument render his conviction void for lack of jurisdiction. The State concedes the information erroneously cited section 3 of the Act (730 ILCS 150/3(b) (West 2014)), while the factual allegations made in the information describe a violation of section 6 of the Act (730 ILCS 150/6 (West 2014)). In addition, the State concedes the information used the word "register" instead of "report" as defined in section 6 of the Act. *Id.* However, the State argues that these deficiencies do not render the defendant's conviction void.

¶ 12        Section 111-3(a)(2) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/111-3(a)(2) (West 2014)) requires that the charging instrument cite "the statutory provision alleged to have been violated." However, "the mere reference in a charging instrument to an incorrect chapter or section of a statute is regarded as a formal rather than a substantive defect." *People v. McBrien*, 144 Ill. App. 3d 489, 495 (1986). Formal defects do not require reversal unless the defendant establishes prejudice from the defect. *Id.* "Only where the defendant demonstrates prejudice will the mere fact that a criminal complaint contains an incorrect citation to the criminal statute be grounds for dismissal of the conviction." *People v. Melton*, 282 Ill. App. 3d 408, 415 (1996).

¶ 13        It is well-settled that where a charging instrument is challenged in a pretrial motion, the charging instrument will be dismissed if it does not strictly comply with the requirements of section 111-3 of the Code. *E.g.*, *People v. Rowell*, 229 Ill. 2d 82, 93 (2008). It is equally well-settled that where an indictment is challenged for the first time on appeal, a defendant must show prejudice in the preparation of his defense. *People v. Davis*, 217 Ill. 2d 472, 479 (2005). In that context, an information will be deemed "sufficient if it apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *People v. Gilmore*, 63 Ill. 2d 23, 29 (1976).

¶ 14        In this case, the defendant is raising a challenge to the charging information for the first time on appeal. He is therefore required to show resulting prejudice in the preparation of his defense. The defendant, however, has put the full force of his argument on appeal behind the legal theory that his conviction is void and he is not obligated to show prejudice in the preparation of his defense. He makes no alternative argument that he actually did suffer prejudice. In any event, the record would contradict any such argument.

¶ 15        The language of the information made clear the defendant was being accused of a violation of section 6 of the Act. Section 6 requires a sex offender to *report* to a law enforcement agency "no later than 90 days after the date of his or her last registration." 730 ILCS 150/6 (West 2014). The information alleged that the defendant "failed to *register* in accordance with the provisions of the Sex Offender Registration Act with the chief of police of Galesburg, Illinois, within 90 days of his last registration on November 12, 2013 *** in violation of 730 ILCS 150/3(b)." Section 3 of the Act requires sex offenders to *register* "within 3 days of beginning school, or establishing a residence, place of employment, or temporary domicile." 730 ILCS 150/3(b) (West 2014). Despite the erroneous citation and the mistaken use of the term "register" rather than "report," it is clear from the facts described in the information that the defendant was being charged with a violation of section 6 rather than section 3.

¶ 16        More importantly, while the defendant argues that the term "register" and "report" have different meanings under the Act, we fail to see how the mistaken use of these terms prejudiced

the defendant in preparing his defense. See *People v. Brock*, 2015 IL App (1st) 133404, ¶¶ 18, 24 (finding that section 6 of the Act does not impose a registration requirement and "one can 'report' without registering"). The defendant admitted that he knew he was required to appear at the police department every 90 days. He also admitted that he failed to appear at the police department before the 90-day period expired because he mistakenly believed he was entitled to a 10-day grace period. In other words, the defendant's entire defense revolved around whether he knowingly violated section 6 of the Act based on his mistaken belief. The defendant fails to explain how his defense would have changed had the information used the term "report" rather than "register." Reversal of the defendant's conviction, therefore, is unwarranted. Although the defendant was not "perfectly" charged, he was "properly" charged. *Melton*, 282 Ill. App. 3d at 416.

¶ 17    In reaching this conclusion, we reject the defendant's argument that the alleged defects in the information deprived the circuit court of subject matter jurisdiction and rendered his conviction void. Illinois courts are granted subject matter jurisdiction for criminal cases by the Illinois Constitution, which grants circuit courts original jurisdiction over all "justiciable matters." Ill. Const. 1970, art. VI, § 9; see also *People v. Benitez*, 169 Ill. 2d 245, 256 (1996); *Gilmore*, 63 Ill. 2d at 26. That is, "jurisdiction is not conferred by information or indictment, but rather by constitutional provisions." *Benitez*, 169 Ill. 2d at 256. Accordingly, a defective charging instrument does not deprive the circuit court of jurisdiction. *Id.*; *People v. Pankey*, 94 Ill. 2d 12, 17 (1983).

¶ 18                    II. The Constitutionality of the SORA Statutory Scheme

¶ 19    Next, the defendant challenges the constitutionality of the current version of the SORA statutory scheme, which he is now subject to for an extended period of time because of his present conviction. We review *de novo* a challenge to the constitutionality of a statute on appeal. *People v. Mosley*, 2015 IL 115872, ¶ 22. Statutes are presumed to be constitutional and, in order to overcome this strong presumption, the defendant must "clearly establish its invalidity." *Id.* "A court will affirm the constitutionality of a statute or ordinance if it is 'reasonably capable of such a determination' and 'will resolve any doubt as to the statute's construction in favor of its validity.' " *Jackson v. City of Chicago*, 2012 IL App (1st) 111044, ¶ 20 (quoting *People v. One 1998 GMC*, 2011 IL 110236, ¶ 20). The defendant makes two arguments in support of his contention: (1) the SORA statutory scheme has become punitive in nature and (2) the SORA statutory scheme violates the due process clauses of the United States and Illinois Constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2). We discuss each argument in turn.

¶ 20    First, the defendant acknowledges that our supreme court has previously upheld the constitutionality of earlier versions of the SORA statutory scheme against constitutional challenges (*e.g.*, *People v. Cornelius*, 213 Ill. 2d 178 (2004); *People v. Malchow*, 193 Ill. 2d 413 (2000)), but he contends that the SORA statutory scheme is different from the versions determined to be constitutional in prior case law because it has become so onerous that it has crossed the threshold from a civil regulatory scheme to a system of punishment. The defendant urges this court to reevaluate the current SORA statutory scheme under the factors outlined in *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963), to determine whether the SORA statutory scheme has become punitive rather than regulatory.

¶ 21    We note, however, that the supreme court in *Cornelius* and *Malchow* examined whether the SORA statutory scheme was "punitive" under *Mendoza-Martinez* in response to an argument that it imposed unconstitutional *ex post facto* criminal penalties. *Cornelius*, 213 Ill. 2d at 206-07; *Malchow*, 193 Ill. 2d at 421. The defendant does not make an *ex post facto* claim. Nor does he argue that the *Mendoza-Martinez* factors support a constitutional claim that is independent of the *ex post facto* clause. Instead, the defendant makes a general claim that the additional burdens created by recent amendments require a "re-examination of prior decisions on this issue." We have a duty to avoid constitutional questions—such as the merits of the defendant's argument that the SORA statutory scheme is punitive—whenever possible. *In re E.H.*, 224 Ill. 2d 172, 180 (2006). Because the defendant makes no specific *ex post facto* claim in arguing for a reexamination of the SORA statutory scheme, we will not consider the question of whether the current version of the SORA statutory scheme imposes unconstitutional *ex post facto* criminal penalties under the *Mendoza-Martinez* factors.

¶ 22    In any event, despite dedicating much of his brief analyzing the *Mendoza-Martinez* factors, the thrust of the defendant's argument on appeal is that the SORA statutory scheme violates his due process rights. Therefore, we focus our analysis on the narrower constitutional grounds offered by the defendant. That is, we consider the merits of the defendant's due process claim.

¶ 23    The fourteenth amendment to the United States Constitution and article I, section 2, of the Illinois Constitution protect individuals from the deprivation of life, liberty, or property without due process of law. U.S. Const., amend. XIV; Ill. Const. 1970, art. I, § 2. Due process analysis requires two inquiries: substantive due process and procedural due process. See *Doe v. City of Lafayette*, 377 F.3d 757, 767-68 (7th Cir. 2004); *In re J.R.*, 341 Ill. App. 3d 784, 791 (2003). As to procedural due process, the government is only allowed to deprive a citizen of "life, liberty, or property" in accordance with certain procedural protections. *City of Lafayette*, 377 F.3d at 767-68. Under substantive due process, the appropriate inquiry is "whether the individual has been subjected to 'the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice.' " *Id.* at 768 (quoting *Bank of Columbia v. Okely*, 17 U.S. (4 Wheat.) 235, 244 (1819)).

> "Where the statute does not affect a fundamental constitutional right, the test for determining whether the statute complies with substantive due process is the rational basis test. [Citation.] To satisfy this test, a statute need only bear a rational relationship to the purpose the legislature sought to accomplish in enacting the statute. [Citation.] Pursuant to this test, a statute will be upheld if it 'bears a reasonable relationship to a public interest to be served, and the means adopted are a reasonable method of accomplishing the desired objective.' " *In re J.W.*, 204 Ill. 2d 50, 67 (2003) (quoting *People v. Adams*, 144 Ill. 2d 381, 390 (1991)).

¶ 24    The defendant argues that the SORA statutory scheme violates the procedural due process rights of sex offenders because it fails to provide a mechanism by which offenders with a low chance of recidivism can seek removal or exclusion from the SORA statutory scheme's requirements and restrictions. The defendant also argues that the SORA statutory scheme violates the substantive due process rights of sex offenders because it infringes on fundamental rights or, in the alternative, fails a rational basis review. The defendant points out that the 2014 version of the SORA statutory scheme now includes new provisions:

> (1) requiring that every sex offender register if convicted of any subsequent felony (730 ILCS 150/3(c)(2.1) (West 2014));

(2) increasing the agencies with which a registrant must register in person (730 ILCS 150/3(a), (d) (West 2014) (must register if residing or temporarily domiciled in a place for three or more days, registrant to notify authorities in the place where he resides and authorities at his travel destination if he travels for three or more days, and required personal reporting to public safety or security director of any higher education institution at which registrant works or attends));

(3) expanding the information a registrant must provide when reporting (730 ILCS 150/3(a) (West 2014) (current photograph, place of employment, telephone numbers, employers telephone number, school attended, email addresses, instant messaging identities, chat room identities, and other internet communications identities that the registrant uses or plans to use, all Uniform Resource Locators registered or used by the registrant, a copy of terms and conditions of parole or release, county of conviction, license plate numbers for every vehicle, age of registrant and victim at the time of offense, any distinguishing marks located on the registrant's body, and whether registrant is living in a household with a child under 18 years old who is not his own child));

(4) increasing number of times a registrant must report in person (730 ILCS 150/6 (West 2014) (requires reporting of individuals without fixed residences every week, individuals who change residences, and any additional times law enforcement requests));

(5) increasing the length of time most registrants must register (730 ILCS 150/7 (West 2014));

(6) shortening the period a registrant must appear in person from ten to three days (730 ILCS 150/3(b), (c)(3), (c)(4) (West 2014));

(7) increasing the initial and annual registration fees (730 ILCS 150/3(c)(6) (West 2014));

(8) increasing punishment for noncompliance (730 ILCS 150/7, 10 (West 2014));

(9) requiring the annual renewal of registrant's driver's license (730 ILCS 5/5-5-3(o) (West 2014));

(10) restricting the presence of offenders within a school zone, and prohibiting offenders from approaching, contacting, residing with, or communicating with a child within certain places by child sex offenders (720 ILCS 5/11-9.3 (West 2014)); and

(11) making it unlawful for a child sex offender or sexual predator to knowingly be present or loiter within 500 feet of any public park building or on real property comprising any public park, at all times, without limitation (720 ILCS 5/11-9.4-1 (West 2014)).

¶ 25 In considering the constitutionality of the above provisions, we observe that two other districts in our appellate court have rejected the very same constitutional arguments that the defendant asserts here. See *In re A.C.*, 2016 IL App (1st) 153047, ¶¶ 35-79 (rejecting due process challenges to the 2014 version of the SORA statutory scheme as applied to a juvenile offender); *People v. Pollard*, 2016 IL App (5th) 130514, ¶ 23 (rejecting the defendant's procedural and substantive due process claims to the 2014 version of SORA statutory scheme). The appellate court in these cases found that the SORA statutory scheme did not violate an individual's due process rights. However, in *People v. Pepitone*, 2017 IL App (3d) 140627,

*appeal allowed*, No. 122034 (Ill. May 24, 2017), this court recently rejected the reasoning in *A.C.* and *Pollard*, as to section 11-9.4-1 of the Criminal Code of 2012, as part of the SORA statutory scheme (720 ILCS 5/11-9.4-1 (West 2014)). Specifically, this court held that section 11-9.4-1, which prohibits child sex offenders and sexual predators from being present or loitering near parks, was overly broad and not reasonably related to its goal. *Pepitone*, 2017 IL App (3d) 140627, ¶¶ 22-24. Therefore, we found section 11-9.4-1 unconstitutional on due process grounds. *Id. Pepitone* did not examine any of the other provisions of the SORA statutory scheme. Upon review, we continue to follow *Pepitone* as to the park restriction; however, we agree with the conclusions reached in *A.C.* and *Pollard* and adopt their reasoning with respect to the remaining restrictions challenged by the defendant.

¶ 26        In *A.C.*, respondent, a juvenile adjudicated as a delinquent of aggravated criminal sexual abuse, challenged the constitutionality of the current version of the SORA statutory scheme (the same statutory scheme the defendant challenges here). *A.C.*, 2016 IL App (1st) 153047. Respondent argued that the SORA statutory scheme violated his due process rights. With regard to the respondent's procedural due process claim, the *A.C.* court observed that the SORA statutory scheme did not "implicate protected liberty or property interests" (*id.* ¶ 63) and concluded that it was appropriate to apply the SORA statutory scheme to juveniles given its intent to protect the public and our supreme court's decisions that the SORA statutory scheme affords respondents sufficient procedural safeguards. *Id.* ¶ 66. As to respondent's substantive due process claim, the court concluded that respondent's claim did not involve a fundamental liberty right and rejected his contention that, under the rational basis test, the SORA statutory scheme violated substantive due process rights, as it is "rationally related to the purpose of protection of the public from sexual offenders and constitute a reasonable means of accomplishing this goal." *Id.* ¶ 57.

¶ 27        Along the same lines, the court in *Pollard* reached a similar conclusion where the defendant also challenged the constitutionality of the current version of the SORA statutory scheme. *Pollard*, 2016 IL App (5th) 130514. The court found that the defendant's procedural due process rights were not violated, as the defendant enjoyed several procedural safeguards associated with his criminal proceedings and the registration obligations were "not sufficiently burdensome to mandate the additional procedural protection of a mechanism to determine his risk of recidivism." *Id.* ¶ 48. As to the defendant's substantive due process claim, the court observed the category of "fundamental rights" is a narrow one, and "[o]ur supreme court has held that sex offender registration provisions do not affect fundamental rights." *Id.* ¶ 35. The court then rejected the defendant's claim that the SORA statutory scheme did not pass the rational basis test because it "advanc[ed] the government's legitimate goal to protect children from sexual predators." *Id.* ¶ 43.

¶ 28        By contrast, in *Pepitone*, this court parted ways with *A.C.* and *Pollard* with respect to the statute, making it unlawful for a child sex offender or sexual predator to knowingly be present in any public park building or on real property comprising any public park, at all times, without limitation (720 ILCS 5/11-9.4-1 (West 2014)). In *Pepitone*, this court found the restriction unconstitutional on substantive due process grounds as it failed the rational basis test. In so holding, this court rejected the opposite conclusion in *Pollard*, finding that the statute swept too broadly in that it criminalized innocent conduct. *Pepitone*, 2017 IL App (3d) 140627, ¶¶ 13, 14. This court noted that the premise of the statute, which is based on the "vague notion that a child or other 'target' may be present in a public park," was overbroad, as the presence of

such a person is "certainly not guaranteed, and, in light of the particular circumstances, may not even be likely." *Id.* ¶ 22. The statute was also overbroad because it criminalized "substantial amounts of innocent conduct, including the walking of a dog," among numerous other activities. *Id.* ¶ 23. In addition, the statute failed to include a provision that would consider the risk posed by the offender. *Id.* ¶ 22. In other words, the statute lacked a mechanism by which offenders with a low risk of recidivism could be removed or excluded from the restriction. *Id.* This court, therefore, concluded that the statutory subsection was facially unconstitutional because it was not reasonably related to its goal of protecting the public from individuals fitting the definition of a child sex offender or sexual predator. *Id.* ¶ 24.

¶ 29    Accordingly, based on the above precedent, we agree with the defendant's contention that the statute prohibiting the presence of child sex offenders and sexual predators from being present or loitering near a park is unconstitutional. See *id.* We otherwise reject the defendant's contention that the remaining restrictions included in the current version of the SORA statutory scheme violate his substantive or procedural due process rights. See *A.C.*, 2016 IL App (1st) 153047, ¶¶ 57, 66; *Pollard*, 2016 IL App (5th) 130514, ¶¶ 44, 48.

¶ 30    Finally, I, as the authoring judge, note that I share the same concerns expressed in Justice McDade's special concurrence that the growing burdens included in the SORA statutory scheme severely impede a released offender's ability to reintegrate into society after serving his or her sentence.

¶ 31                                                    CONCLUSION

¶ 32    The judgment of the circuit court of Knox County is affirmed.

¶ 33    Affirmed.

¶ 34    JUSTICE McDADE, specially concurring.

¶ 35    The majority affirms the defendant's conviction for unlawful failure to register as a sex offender (*supra* ¶ 16). At the outset, I concur with Justices Holdridge's and O'Brien's finding that the defendant was properly charged with the offense of unlawful failure to register as a sex offender (*supra* ¶ 16). I also concur with Justice Holdridge's finding that section 11-9.4-1(b) of the Criminal Code of 2012, as part of the SORA statutory scheme (720 ILCS 5/11-9.4-1(b) (West 2014)), is unconstitutional on its face (*supra* ¶ 29). Additionally, I concur with Justices Holdridge's and O'Brien's finding that the remaining provisions of the SORA statutory scheme are constitutional (*supra* ¶ 29). However, I write separately on this final issue to express my concerns with the increasing restrictions included in the SORA statutory scheme.

¶ 36    SORA began as a concept intended to protect the public from the danger posed by released sex offenders. See *Adams*, 144 Ill. 2d at 387 (holding that the legislative intent in requiring the registration of sex offenders was to create an additional protection for children from the increasing incidence of sexual assault and child abuse). Since then, SORA has become increasingly onerous with regard to the amount of information a sex offender must disclose, the number of agencies to which the information must be disclosed, and how often a sex offender must register. The SORA statutory scheme currently includes provisions that directly restrict where a prior offender can live, work, and even how he or she can move about the

community on a daily basis. I have two specific concerns with the current iteration of the SORA statutory scheme pertinent to this appeal.

¶ 37    First, its reach is incredibly broad. Specifically, the legislature has failed to include any provision to narrow the scope of its application by distinguishing between those offenders who are *likely* to reoffend and those who are not. In other words, critically absent from the SORA statutory scheme is any mechanism by which a former offender can be exempted from its restrictions by showing that he or she is not a significant risk to reoffend. Without such a mechanism, *all* offenders will be equally burdened, despite the fact that some pose little or no threat to children or others.

¶ 38    Second, the constant narrowing of the registration requirements in SORA make it nearly impossible, over the course of a lifetime (for some offenders), to maintain faithful compliance with the law. For example, the current version increases the number of times a registrant must report in person and shortens the period within which he or she must appear in person to register from 10 days to 3 days. See 730 ILCS 150/6, 3(b), (c)(3), (c)(4) (West 2014). The more frequent in-person registrations and shortened time frame make it more likely that an offender will run afoul of the regulation and become subject to additional criminal prosecution. Further, there are no exceptions to the in-person registration requirement. Thus, no registrant can present a valid excuse for failing to report in time—even one who is confined to the hospital as in one recent case in this court.

¶ 39    As a consequence of the above restrictions, a released offender is severely impeded in his or her ability to find employment, decide where to live, have free access to public spaces, and move freely throughout the state or country. In other words, these provisions make it nearly impossible for an offender to reintegrate normally into society after serving their prison term. I acknowledge that Illinois courts have held that residency, employment, and notification provisions in the SORA statutory scheme do not violate an offender's due process rights. See *People v. Avila-Briones*, 2015 IL App (1st) 132221, ¶ 75 (rejecting claim that prohibition on sex offender's presence near school property affected fundamental rights); *Rodrigues v. Quinn*, 2013 IL App (1st) 121196, ¶ 7 (provision requiring revocation of nursing license for convicted sex offender did not affect fundamental rights because the right to pursue a profession is not a fundamental right for due process purposes); *People v. Morgan*, 377 Ill. App. 3d 821, 826-27 (2007) (rejecting defendant's *ex post facto* challenge to residency restriction); *People v. Leroy*, 357 Ill. App. 3d 530, 534 (2005) (rejecting claim that residency restriction affected fundamental right to decide where to live because defendant did not have a fundamental right "to live with his mother and enjoy her support within 500 feet of a school"); *J.W.*, 204 Ill. 2d at 67 (holding that sex offender registration provisions do not affect fundamental rights). Even so, I am compelled to express my concern that an increasingly restrictive SORA statutory scheme has moved in a direction that is at odds with not only the basic foundational principles of our constitution—that all individuals, including those who have committed a crime and served their sentence, should be afforded the right to life, liberty, and the pursuit of happiness—but also with such basic rights of citizenship as equal access to the benefits and services supported by their taxes and the fair representation of their elected officials.

¶ 40    In sum, I believe the legislature has failed to equitably balance the various human interests impacted by SORA. As it stands, SORA fails to consider reasonable interests that an offender, who has completed the sentence the legislature deemed sufficient, especially one who is

unlikely to reoffend, has in resuming a normal family and work life.

¶ 41    JUSTICE O'BRIEN, concurring in part and dissenting in part.

¶ 42    The majority affirms defendant's conviction for unlawful failure to register as a sex offender (*supra* ¶ 16). In doing so, the majority makes three independent legal findings. I will address each finding in turn.

¶ 43    First, I concur in the majority's finding that defendant was properly charged with the offense of unlawful failure to register as a sex offender (*supra* ¶ 16). I agree that the charging instrument sufficiently apprised defendant of the precise offense charged. Stated another way, the instrument did not deprive defendant of his ability to prepare his defense.

¶ 44    Second, I dissent from the majority's finding that section 11-9.4-1(b) of the Criminal Code of 2012, as part of the SORA statutory scheme (720 ILCS 5/11-9.4-1(b) (West 2014)), is unconstitutional on its face (*supra* ¶ 29). In its analysis, the majority cites this court's previous decision in *Pepitone*. The majority in *Pepitone* found section 11-9.4-1(b) unconstitutional on substantive due process grounds. I reject the majority's reasoning in *Pepitone* and instead adopt that of the dissent. In my view, the means adopted in section 11-9.4-1(b) "are a reasonable method of accomplishing the legislature's desired objective of protecting the public from sex offenders." *Pepitone*, 2017 IL App (3d) 140627, ¶ 31 (Carter, J., dissenting).

¶ 45    Significantly, the rational basis test only requires that the statute have a rational relationship to the government objectives. *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 83. "By keeping sex offenders who have committed sex offenses against children away from areas where children are present, the legislature could have rationally sought to avoid giving those sex offenders an opportunity to reoffend." *Pepitone*, 2017 IL App (3d) 140627, ¶ 32 (Carter, J., dissenting) (citing *Avila-Briones*, 2015 IL App (1st) 132221, ¶ 84; *Pollard*, 2016 IL App (5th) 130514, ¶ 42).

¶ 46    The majority in this case does not reach the issue of whether section 11-9.4-1(b) satisfies procedural due process requirements in light of the fact it found the provision violated defendant's substantive due process rights. Given that I would find section 11-9.4-1(b) satisfies substantive due process, I would consider whether the provision complies with procedural due process requirements. Because the SORA statutory scheme does not implicate protected liberty or property interests and because it affords defendant sufficient procedural safeguards, I would find that section 11-9.4-1(b) also does not violate defendant's procedural due process rights. See *Pollard*, 2016 IL App (5th) 130514, ¶ 48; *A.C.*, 2016 IL App (1st) 153047, ¶¶ 63, 66. Therefore, I would conclude that section 11-9.4-1(b) satisfies substantive and procedural due process requirements. See *Pollard*, 2016 IL App (5th) 130514; *A.C.*, 2016 IL App (1st) 153047.

¶ 47    Finally, I concur with the majority's finding that the remaining provisions of the SORA statutory scheme are constitutional (*supra* ¶ 29). As the majority observes, two other districts in our appellate court have rejected the very same constitutional arguments that defendant asserts here. See *A.C.*, 2016 IL App (1st) 153047, ¶¶ 35-79 (rejecting due process challenges to the SORA statutory scheme as applied to a juvenile offender); *Pollard*, 2016 IL App (5th) 130514, ¶ 23 (rejecting defendant's procedural and substantive due process claims to the SORA statutory scheme). Like the majority, I agree with the reasoning in both cases and would find that the remaining provisions of the SORA statutory scheme do not violate defendant's substantive or procedural due process rights.

¶ 48 Accordingly, I would affirm defendant's conviction and also find that the entire SORA statutory scheme, including section 11-9.4-1(b), does not violate defendant's constitutional due process rights.